# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>CHRISTOPHER B. WINE<br>a/k/a CHRISTOPHER BRENT WINE<br>a/k/a CHRISTOPHER WINE,<br><br>Debtor. | Bankruptcy Case No. 15-13483 TBM<br><br>Chapter 13 |
| STATE OF COLORADO, DIVISION OF FINANCE & PROCUREMENT, CENTRAL COLLECTION SERVICES, as Agent for COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT, an Agency of the State of Colorado,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER B. WINE<br>a/k/a CHRISTOPHER BRENT WINE<br>a/k/a CHRISTOPHER WINE<br>a/k/a CHRIS B. WINE<br>a/k/a CHRIS WINE,<br><br>Defendant. | Adv. Pro. No. 15-01366 TBM |

## ORDER DENYING MOTION TO DISMISS

## I.     Introduction.

During the Great Depression, Colorado adopted an unemployment compensation system as a safety net for "persons unemployed through no fault of their own."[1]  Although the system has been modified over the years,[2] the foundation has remained the same.  Employers are required to make contributions to an unemployment compensation fund administered by the State of Colorado (the "State").  Eligible workers who suffer total or partial unemployment may apply for benefits. The benefits are paid from the unemployment compensation fund.  The *quid pro quo* for receiving

---

[1]     Unemployment Compensation Act, 1939 Colo. Ex. Sess. Laws (3rd Sess.) § 2.

[2]     The current version is the Colorado Employment Security Act, COLO. REV. STAT. § 8-70-101 *et seq.*

benefits is that the eligible worker must provide accurate information concerning income and employment. Abuse of the system can occur when a worker wrongfully claims an unemployment benefit for a period during which a worker actually was employed or when a worker otherwise provides inaccurate income or employment information. Such circumstances can result in an overpayment of benefits. When an overpayment is discovered, the State may seek recovery of the overpayment, along with a penalty and collection fees. That is what happened in this case — the State sought recovery of overpaid unemployment compensation, statutory penalties, and collection fees from Christopher B. Wine (the "Debtor").

But, then, the Debtor filed for protection under Chapter 13 of the Bankruptcy Code. The goal of most bankruptcy debtors is a discharge. If the Debtor successfully completes the terms of his confirmed Chapter 13 Plan, the Debtor ordinarily would be entitled to a discharge of debts under Section 1328(a)[3] of the Bankruptcy Code. All of which brings us to the current contested matter. The State filed a proof of claim against the Debtor for alleged overpaid unemployment benefits (during various periods in 2013 and 2014), statutory penalties, and collection fees. The State asserts that the overpayments occurred because the Debtor fraudulently misrepresented his employment income.

In addition to filing the proof of claim, the State initiated this lawsuit alleging that the Debtor's debt to the State for the overpaid unemployment compensation, penalties, and collection fees is nondischargeable under Section 523(a)(2)(A) because the overpayments were obtained by "false pretenses, a false representation, or actual fraud." The Debtor answered and also submitted a "Motion to Dismiss." (Docket No. 13, the "Motion to Dismiss"). The Debtor concedes that he received overpayments of unemployment compensation and that such overpayments are nondischargeable under Section 523(a)(2)(A). But, the Debtor argues that the portions of the debt owed to the State for statutory penalties and collection fees are dischargeable as a matter of law under the broad Chapter 13 discharge.

So, the core legal question presented by the Motion to Dismiss is: Can a debt owed to a governmental unit for statutory penalties and collection fees arising from overpaid unemployment compensation obtained by fraud be excepted from the Chapter 13 discharge under Section 523(a)(2)(A)?

## II.     Jurisdiction and Venue.

The Court has subject matter jurisdiction over this adversary proceeding concerning dischargeability pursuant to 28 U.S.C. § 1334. Furthermore, this is a core proceeding under 28 U.S.C. § 157(b)(2)(I) because it seeks a determination as to the dischargeability of a particular debt. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

## III.     Standard Governing Motion to Dismiss.

The Debtor presented the Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, which is made applicable to adversary proceedings by Rule 7012 of the Federal

---

[3]     Unless otherwise indicated, all references to "Section" are to Sections of the United States Bankruptcy Code, 11 U.S.C. §§ *et seq.*

Rules of Bankruptcy Procedure.  A motion under Rule 12(b)(6) tests the legal sufficiency of a complaint.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The court must accept all of the well-pleaded factual allegations in the complaint as true.  *Iqbal*, 556 U.S. at 678 (factual allegations are "accepted as true"); *Wasatch Equality v. Alta Ski Lifts Co.*, 820 F.3d 381, 386 (10th Cir. 2016) (quoting *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012)) ("we 'accept all facts pleaded by the non-moving party as true and grant all reasonable inferences from the pleadings in favor of the same'").  Then, the court must decide whether the complaint contains sufficient "facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

There is a strong presumption against the dismissal of claims under Rule 12(b)(6).  *See Cottrell, Ltd. v. Biotrol Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999).  Dismissal of a complaint is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  The issue is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true . . . .

*Twombly*, 550 U.S. at 555 (internal citations omitted).

## IV.   Procedural and Factual Background.

The Debtor filed his petition for relief under Chapter 13 of the Bankruptcy Code on April 4, 2015.  (Docket No. 1, Case No. 15-13483.)  Four months later, the Court confirmed the Debtor's Chapter 13 Plan.  (Docket No. 63, Case No. 15-13483.)

### A.   The Amended Complaint and Alleged Facts.

The State initiated this adversary proceeding by filing a "Complaint to Determine Dischargeability of Debt."  (Docket No. 1.)  Thereafter, the State amended its claim.  The State's operative pleading is the "Amended Complaint to Determine Dischargeability of Debt."  (Docket No. 7, the "Amended Complaint" or "Am. Compl.")

In the Amended Complaint, the State alleges that the Debtor "received unemployment insurance benefits in the total amount of $10,123.00 for the weeks ending January 12, 2013 through March 2, 2013, March 9, 2013 through April 6, 2013, July 27, 2013 through September 14, 2013, October 26, 2013, November 2, 2013 through December 7, 2013 and January 25, 2014 through August 9, 2014[.]"  Am. Compl. ¶ 5.  Further, the State asserts that the Debtor "failed to disclose all of his hours worked and earnings" for the periods during which he received unemployment compensation benefits.  Am. Compl. ¶¶ 6 and 8.  The State itemizes the alleged

"unreported and underreported earnings and overpayments of unemployment benefits" in exhibits attached to the Complaint.  Am. Compl. ¶ 10.

The State claims that it sent the Debtor three "Determinations of Overpayment of Benefits and Demands for Payment":

- the "July 22, 2014 Determination," which related to the weeks ending January 12, 2013, through March 2, 2013; March 9, 2013 through April 6, 2013, July 27, 2013 through September 14, 2013, and October 26, 2013;

- the "September 3, 2014 Determination," which related to the weeks ending November 2, 2013 through November 23, 2013, and December 7, 2013; and

- the "September 11, 2015 Determination," which related to the weeks ending January 25, 2014 through August 9, 2014.

Am. Compl. ¶ 11 and Exs. E, F, and G.

On August 10, 2014, the Debtor filed an appeal of the July 22, 2014 Determination.  Am. Compl. ¶ 12.  The State asserts that the Appeals Section of the Colorado Department of Labor and Employment, Division of Unemployment Insurance held a hearing on the appeal and that a Hearing Officer made the following findings of fact:

> **Findings of Fact:** The claimant applied for benefits on October 30, 2012.  His weekly benefit amount was $230 a week, and then was $359 a week starting the week of March 9, 2014.  He received a handbook and read it.  He knew the Division expected him to report his hours and wages accurately.  He knew he would get more benefits if he reported less income.  He knew when he reported on CUBLine he had to report whether he was working, how many hours he worked and the wages he earned.  The claimant has applied for and received unemployment benefits five times prior to this recent application.  The claimant has had no prior problems in the past reporting his income on CUBLine.
>
> Despite knowing this, the clamant chose not to report his work at Il Postino at all on CUBLine from March 9, 2013, until April 6, 2013.   From July 27, 2013, until September 14, 2013, he greatly underreported his earnings.  Even thought [sic] he knew he had to report he was working, he chose to input that he was not working at all from January 12 - April 9, 2013.

Am. Compl. ¶ 15, Ex. I.

In addition, the State alleges that the Hearing Officer made a specific determination of fraud.  The Hearing Officer concluded that:

> *[T]he claimant received an overpayment due to false representations.* The claimant failed to report or underreported her [sic] hours and wages for all of the aforementioned weeks, despite knowing that the Division expected him to accurately report his hours, wages and work. The claimant knew he would get more benefits if he underreported or did not report his wages. When the claimant input whether he was working and what his hours and wages were, he knew what he was inputting was not accurate and would ensure he would receive more benefits. The claimant's false input into CUBLine resulted in an overpayment of benefits. *Because the claimant's intentional false representations resulted in an overpayment, the claimant is subject to a penalty of sixty-five percent.*

Am. Compl. ¶ 16, Ex. I (emphasis added). The Debtor did not appeal the Hearing Officer's decision on the July 22, 2014 Determination, nor did he appeal the September 3, 2014 Determination or the September 11, 2015 Determination. Am. Compl. ¶¶ 18-19.

The State contends that the Debtor "fraudulently and under false pretenses obtained" overpayments of unemployment compensation to which he was not entitled. The State further alleges that, pursuant to COLO. REV. STAT. § 8-81-101(4), the Debtor is indebted to the State in the following amounts:

- Under the July 22, 2014 Determination: $4,267 of overpayments, plus a 65% monetary penalty in the amount of $2,773.55, for a total of $7,040.55[4];

- Under the September 3, 2014 Determination, $295 of overpayments, plus a 65% monetary penalty in the amount of $191.75, for a total of $486.75;

- Under the September 11, 2015 Determination, $4,494 of overpayments, plus a 65% monetary penalty in the amount of $2,741.05,[5] for a total of $7,235.05.

Am. Compl. ¶¶ 21-22, Ex. I. The State also asserts that the Debtor is liable for a twenty-five percent (25%) collection fee in the amount of $3,690.58,[6] pursuant to COLO. REV. STAT. § 8-79-102. Am. Compl. ¶ 22.

Summing the amounts by classification, the State claims: (1) $9,056 of overpaid unemployment compensation; (2) $5,706.35 of statutory penalties; and (3) $3,690.58 of collection fees. All told, the State asserts an $18,452.93 debt. Under the applicable legal standard, the Court accepts all of the foregoing alleged facts as true for purposes of ruling on the Motion to Dismiss.

---

[4]   These amounts are as adjusted by the Hearing Officer. However, even with the adjustments, it appears that there is a typographical error in the Amended Complaint. The State claimed that the total for the July 22, 2014 Determination was "$7,045.55" instead of $7,040.55." The Court uses the lower amount.

[5]   Sixty-five percent (65%) of $4,494.00 is $2,921.10. However, the penalty set forth in the September 11, 2015 Determination is the lesser amount of $2,741.05. As such, the lower amount is the proper amount of that component of the State's claim.

[6]   The calculated amount of the collection fee appears to be correct, notwithstanding the typographical error discussed above.

Based upon the alleged facts, the State asserts that the entire amount claimed ($18,452.83) is nondischargeable under Section 523(a)(2)(A). The Section 523(a)(2)(A) claim is the only claim asserted by the State asserted in the Amended Complaint.

**B.      The Motion to Dismiss.**

In the Motion to Dismiss, the Debtor does not attack any of the factual allegations asserted by the Plaintiff in the Amended Complaint. Instead, the Debtor presents a narrow legal argument directed *only* to the dischargeability of the statutory penalties and collection fees asserted in the Amended Complaint. (The Debtor concedes that the overpayment of unemployment compensation is nondischargeable under Section 523(a)(2)(A). [7] Specifically, the Debtor contends that the statutory penalties and collection fees are "not barred from a discharge entered pursuant to § 1328(a)." Motion to Dismiss at 2. The State filed a response in which it disputes this contention. (Docket No. 14.) Subsequently, both the Debtor and the State presented oral argument and submitted additional legal briefs. (Docket Nos. 17 and 18.) The Court commends counsel for both the Debtor and the State for presenting cogent and thoughtful arguments on a difficult legal issue.

**V.      Legal Conclusions.**

**A.      Section 523(a)(2)(A) Excepts from Discharge Overpaid Unemployment Compensation Obtained by False Pretenses, False Representations, or Actual Fraud and Related Penalties and Collection Fees.**

The legal issue presented in this case requires interpretation of the statutory provisions governing bankruptcy discharge. Since the Debtor filed for protection under Chapter 13 and confirmed a Chapter 13 Plan providing for payments over a period of five years, the discharge is broader than that available in a Chapter 7 liquidation. But there are still limits. Section 1328(a)(2) provides:

> [A]s soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt . . . of the kind specified . . . in paragraph (1)(B), (1)(C), (2), (3), (4), (4), (5), (8), or (9) of section 523(a).

Thus, debts within the ambit of Section 523(a)(2) are nondischargeable in Chapter 13 cases if the creditor follows the procedural requirements and secures a determination of nondischargeability. 11 U.S.C. § 523(c)(1) (requiring creditor to commence an action to determine nondischargeability); Fed. R. Bankr. P. 4007(c) (establishing the time period for commencement of a nondischargeability action). In this case, the State followed the procedural mandate and initiated this adversary proceeding in a timely fashion to determine the nondischargeability of the debt owed by the Debtor to the State for the overpaid unemployment compensation, penalties, and collection fees.

---

[7]      *See* Docket No. 21 ("The Defendant agrees that the Defendant's debt to the Plaintiff in the amount of the balance of the unemployment overpayments of $9,056 . . . shall be determined to be nondischargeable.").

So, the next issue is whether the State properly stated a claim for a determination of nondischargeability under Section 523(a)(2)(A). The Court "begin[s] and end[s] with the plain meaning of the words that Congress employed." *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 2016 WL 3741983, at *4 (10th Cir. Jul. 12, 2016). The text of Section 523(a)(2)(A) excepts from discharge:

> [a]ny debt . . . for money, property, [or] services . . . to the extent obtained by . . . false pretenses, a false representation, or actual fraud . . . .

And, the Bankruptcy Code defines the term "debt" to mean "liability on a claim" including a "right to payment." 11 U.S.C. §§ 101(5)(A) and (12).

In this case, the State bases its right to payment from the Debtor on state law. Accepting the allegations in the Amended Complaint as true for purposes of deciding the Motion to Dismiss, the State has pled sufficient detailed facts to establish that the Debtor received $9,056 of overpaid unemployment compensation as a result of "false pretenses, a false representation, or actual fraud." The alleged fraudulent conduct was that the Debtor knowingly "failed to disclose all of his hours worked and earnings" in his applications to the State for unemployment compensation while he was working at the Il Postino restaurant. During some periods, the Debtor simply claimed that he was unemployed when, in fact, he was working at the restaurant. For other periods, he identified fewer hours of partial employment than he actually worked and asserted less compensation than he actually received. These false representations resulted in the Debtor's obtaining substantial overpayments of unemployment compensation.

The State is entitled to recover overpaid unemployment compensation under the Colorado Employment Security Act (the "CESA"). COLO. REV. STAT. § 8-81-101(4)(a)(I) states that "[a]ny person who has received any sum as benefits . . . to which he was not entitled shall be required to repay such amount" to the State. Further, the CESA penalizes claimants who engage in fraud resulting in overpayment of unemployment benefits. The CESA provides:

> If any person receives an overpayment because of his or her false representation or willful failure to disclose a material fact . . . the person shall pay [to the State] the total amount of the overpayment plus a sixty-five percent monetary penalty.

COLO. REV. STAT. § 8-81-101(4)(a)(II). Additionally, the State may recover collection fees. COLO. REV. STAT. § 8-79-102.

Based on a plain reading of Section 523(a)(2)(A) and the CESA, and accepting the facts alleged in the Amended Complaint as true, the State adequately alleges a claim for payment against the Debtor for overpaid unemployment compensation, statutory penalties, and collection fees in the amount of $18,452.93. That is the amount of the debt. And, all three components of the State's claim (overpaid unemployment compensation, statutory penalties, and collection fees) stem from the same fraudulent conduct — the Debtor's fraudulent misreporting of hours worked and income earned. So, the State adequately states a nondischargeability claim under Section

523(a)(2)(A).  *See Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1263 (10th Cir. 2014) ("[I]f the statutory language is clear, our analysis ordinarily ends.") (quoting *Coffey v. Freeport McMoran Copper & Gold*, 581 F.3d 1240, 1245 (10th Cir. 2009)).

But, the Debtor suggests that statutory penalties and collection fees are not really part of the debt owed to the State by the Debtor.  The argument is foreclosed by Supreme Court precedent:  *Cohen v. de la Cruz*, 523 U.S. 213 (1998).  The issue in *de la Cruz* was whether Section 523(a)(2)(A) "bars the discharge of treble damages awarded on account of the debtor's fraudulent acquisition of 'money, property, services, or . . . credit' or whether the exception only encompasses the value of the 'money, property, services, or . . . credit' the debtor obtains through fraud."  *Id*. at 215.  Put another way, is Section 523(a)(2)(A) limited only to compensatory damages for "money, property, services, or . . . credit" fraudulently obtained by a debtor?  The Supreme Court rejected any such limitation and held:

> The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or . . . credit" that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud.

*Id*. at 218.  The *de la Cruz* decision focused on the term "debt" under the Bankruptcy Code, which means a "right to repayment."  11 U.S.C. §§ 101(5)(A) and (12).  According to the Supreme Court, the term "debt" is extremely broad and Section 523(a)(2)(A) bars the discharge of *all liability arising from fraud . . . .*"  *Id*. at 222 (emphasis added).  Put another way:

> [T]he text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that "any debt . . . for money, property, services, or . . . credit, to the extent obtained by" fraud encompasses *any liability arising* from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor.

*Id*. at 223 (emphasis added).  So *de la Cruz* quite definitively dictates that collection fees (such as the $3,690.58 sought by the State in this case) arising from money fraudulently obtained are nondischargeble.[8]  *See also Indiana Dep't of Workforce Dev. v. Coulter (In re Coulter)*, 2016 WL 1522675, at *3 (Bankr. S.D. Ind. Apr. 8, 2016) ("Congress fully intended that all debts for fraud under § 523(a)(2), including debts that are compensatory in nature as well as debts that are punitive in nature, be nondischargeable in Chapter 13.").

Nevertheless, the Debtor posits that statutory penalties (such as the $5,706.35 sought by the State in this case) are different than the other types of liability arising from fraud.  It is true that *de la Cruz* addressed treble damages and attorney's fees, not penalties.  However, the Court fails to

---

[8]      In light of the rather express holding of *de la Cruz* concerning attorney's fees arising from money fraudulently obtained, the Court need not further consider the Debtor's argument against the nondischargeability of collection fees.  Instead, the balance of this decision focuses only on the remaining argument concerning statutory penalties since penalties were not expressly addressed in *de la Cruz*.

see any real difference between those damages and statutory penalties under the *de la Cruz* approach. Instead, the focus is on debt and whether the liability arises from money obtained by fraud. Under the well-pleaded facts, the statutory penalties asserted by the State arise from the Debtor's fraud. Indeed, under CESA, the statutory sixty-five percent (65%) penalty may only be imposed and collected if the debtor receives an overpayment of unemployment compensation "because of his or her false representation or willful failure to disclose a material fact." COLO. REV. STAT. § 8-81-101(4)(a)(II).

Although appreciating the Debtor's argument, the Court rejects the Debtor's efforts to distinguish *de la Cruz*. Instead, the Court determines that *de la Cruz* controls and dictates that penalties arising from overpaid unemployment compensation obtained by "false pretenses, a fraudulent representation, or actual fraud" are nondischargeable under Section 523(a)(2)(A) to the same extent as the restitutionary debt for overpaid unemployment compensation. *Coulter*, 2016 WL 1522675 (applying *de la Cruz* and determining that penalties derived from overpaid unemployment compensation are excepted from discharge under Section 523(a)(2)(A)); *Michigan Unemployment Ins. Agency v. Kozlowski (In re Kozlowski)*, 547 B.R. 222 (Bankr. E.D. Mich. 2016) (applying *de la Cruz* and denying motion to dismiss Section 523(a)(2)(A) claim for nondischargeability of penalties arising from fraudulent overpayment of unemployment compensation).

**B.      The Penalties Arising from Overpaid Unemployment Compensation Obtained by False Pretenses, Fraudulent Representations, or Actual Fraud Do Not Become Dischargeable under Section 523(a)(7).**

The Debtor invites the Court to look past Section 523(a)(2)(A), which is the only claim asserted by the State in the Amended Complaint. Instead, the Debtor posits that the interplay between Sections 523(a)(7) and 1328(a)(2) dictates that all penalties imposed by governmental units are dischargeable in Chapter 13. As articulated by the Debtor, Section 523(a)(7) "governs this case because it more directly addresses the circumstances of this case, i.e. a governmental unit attempting to collect penalties and statutory attorney fees." (Docket No. 18 at 6.) The Debtor contends:

> Because penalties imposed by the State of Colorado would fall under 11 USC § 523(a)(7) in the category of non-compensatory fines, penalties, and forfeitures and, since such debts are not listed as an exception to discharge under 11 USC § 1328(a)(2), they are dischargeable in this Chapter 13 Case.

(Docket No. 18 at 3.) For good measure, the Debtor suggests that "[i]f the Court finds that penalties and attorney fees are also available under § 523(a)(2) in this case, it effectively makes § 523(a)(7) completely superfluous and without any statutory purpose." (Docket No. 18 at 6.)

The Debtor is correct that Section 523(a)(7) does except from discharge "any debt . . . for a fine, penalty, or forfeiture payable to the benefit of a governmental unit, and is not compensation for actual pecuniary loss . . . ." Furthermore, the Debtor is right that in Chapter 13 cases, Section 523(a)(7) is not listed as one of the exceptions to discharge. 11 U.S.C. § 1328(a). And, the Debtor correctly cited a recent decision that strongly and unequivocally supports the Debtor's position:

*Michigan Unemployment Ins. Agency v. Andrews (In re Andrews)*, 2015 WL 5813418 (Bankr. E.D. Mich. Oct. 2, 2015) [hereinafter, "*Andrews I*"] ("by omitting penalty debts from section 1328(a)(2), Congress intended that they remain dischargeable under Chapter 13 — a vestige of the super discharge").

But, the *Andrews I* decision (which is the Debtor's main legal authority) recently was reversed on appeal[9] and has not been followed by any other courts. *Michigan Unemployment Ins. Agency v. Andrews (In re Andrews)*, 2016 WL 4497757 (E.D. Mich. Aug. 24, 2016) [hereinafter, "*Andrews II*"] (reversing *Andrews I*); *Coulter*, 2016 WL 1522675, at *3 (finding logic of *Andrews I* unpersuasive); *Kozlowski*, 547 B.R. at 236 (respectfully disagreeing with *Andrews I*). And, the Debtor's legal arguments, while creative and novel in this jurisdiction, are undercut by a number of debilitating flaws.

Perhaps most importantly, the Debtor's focus on the *omission* of Section 523(a)(7) debts from the exceptions to discharge listed in Section 1328(a) is misplaced. *See Royal Am. Oil & Gas Co. v. Szafranski (In re Szafranski)*, 147 B.R. 976, 982 (Bankr. N.D. Okla. 1992) ("Negative inference as a method of statutory interpretation tends to make law out of what the legislature has *not* said. This is risky; such "interpretation" can easily become interpolation.") (emphasis in original). Indeed, all the omission does is establish that debts under Section 523(a)(7) are not, *per se*, excepted from discharge in Chapter 13. As such, the Court's focus is more properly on the specific language that Congress *did* include in the statute, including, in particular, the express and affirmative *inclusion* in Section 1328(a) of debts of the kind specified in Section 523(a)(2). By including Section 523(a)(2) debts in the exceptions to discharge in Section 1328(a), Congress expressed a clear intent to prohibit the discharge of any and all debts arising from fraud. Further, Congress' omission of Section 523(a)(7) debts from the exceptions to discharge does not indicate that such debts are always to be dischargeable — but rather that they are not always nondischargeable. *Kozlowski*, 547 B.R. at 231. Indeed, with the omission, Congress left open the possibility that Section 523(a)(7) debt might be found to be nondischargeable under any one of the specific exceptions to discharge set forth in Section 1328(a). Thus, under a plain meaning analysis, all debts arising from money obtained by fraud, including penalties, are nondischargeable under Section 523(a)(2)(A).

## 1.    The State Is Not Limited to a Single Nondischargeability Claim.

The State seeks a determination of nondischargeability under Section 523(a)(2)(A) for penalties arising from fraudulently obtained unemployment compensation. The Debtor claims that the State must proceed only under Section 523(a)(7), but has provided no direct authority for such proposition (except the overruled *Andrews I* decision). The Bankruptcy Code does not limit a creditor to only one Section 523 cause of action. Instead, "Government agencies, like any creditor, have the choice of relying on one or more of the subsections of § 523(a) to object to the discharge of a particular debt." *Kozlowski*, 547 B.R. at 232; *see also Coulter*, 2016 WL 1522675, at *3 ("governmental agencies are not limited in recourse to section 523(a)(7) as regards penalties incurred by fraud").

---

[9]    The appellate reversal of *Andrews* occurred only after the Motion to Dismiss was fully briefed by the Debtor and the State. Accordingly, neither party raised the reversal.

In the Court's experience, creditors commonly assert multiple Section 523(a) claims. For example, Section 523(a)(2)(A) claims ("false pretenses, a false representation, or actual fraud") frequently are paired with Section 523(a)(4) claims ("fraud or defalcation while acting in a fiduciary capacity"). Creditors are not required to choose one or the other. *See Kozlowski,* 547 B.R. at 234 ("There is no rule that more than one subsection of § 523(a) can never apply to the same debt."). Instead, each subsection of Section 523(a) operates independently and has its own requirements and elements of proof. This case is no different. The State likely could have asserted a claim for nondischargeability of penalties arising from the overpayment of unemployment compensation under Section 523(a)(7). But it did not; instead, the State elected to proceed only under Section 523(a)(2)(A). In such circumstances, the Court's role is only to determine whether the State properly alleged sufficient facts which, if proved, make the Section 523(a)(2)(A) claim plausible on its face. Focusing on Section 523(a)(2)(A), and for the reasons previously stated, the State has stated a plausible Section 523(a)(2)(A) claim.

**2.    Permitting a Penalties Claim Under Section 523(a)(2)(A) Does Not Make Section 523(a)(7) Superfluous — There Is No Conflict and Both Sections Can Be Harmonized.**

The Debtor proposes that nondischargeability of penalties must be pursued under Section 523(a)(7), which deals expressly with governmental penalties, otherwise Section 523(a)(7) will be rendered "superfluous." Certainly, the Debtor is correct that under the "surplusage cannon" of statutory interpretation, courts should be reluctant "to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Pennsylvania Dep't of Pub. Welfare v. Davenport,* 495 U.S. 552, 562 (1990) (interpreting Section 523(a)(7)); *see also* Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174 (Thomson/West Pub. 2012) (describing surplusage cannon).

However, the Debtor's argument fails because permitting a nondischargeability claim under Section 523(a)(2)(A) for penalties arising from money obtained by fraud does not render Section 523(a)(7) superfluous. The reason is that Sections 523(a)(2)(A) and 523(a)(7) are independent and are not completely duplicative. The most that can be said is that Sections 523(a)(2)(A) and 523(a)(7) overlap in part. "[B]oth sections cover non-compensatory penalties payable to and for the benefit of a governmental unit that arise from fraud." *Kozlowski*, 547 B.R. at 232. But, it is exceedingly common for statutes (in the Bankruptcy Code and otherwise) to have some overlap. *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("Redundancies across statutes are not unusual events in drafting, and so long as there is no 'positive repugnancy' between two laws, . . . a court must give effect to both.") (internal citation omitted).

Section 523(a)(7) deals with debt for "fine[s], penalt[ies], or forfeiture[s]" generally and irrespective of whether the debt arises from money obtained by fraud. To say it differently, there are plenty of governmental penalties that have nothing whatsoever to do with fraud. For example, a real estate broker who "fail[s] to provide the purchaser and seller of real estate with a closing statement" may be liable for a civil administrative fine of up to $2,500. COLO. REV. STAT. § 12-61-113(1)(h). A debt for that type of penalty may be dischargeable in a Chapter 13 case under Section 523(a)(7) and 1328(a)(2).

But penalties arising from fraud are altogether different.  In Section 523(a)(2)(A), Congress enacted a statute of general application for the nondischargeability of any and all debt arising from money obtained by "false pretenses, a false representation, or actual fraud."  This statute is entirely consistent with one of the basic purposes of the Bankruptcy Code — to provide relief only to the "honest but unfortunate debtor." *De la Cruz*, 523 U.S. at 217 (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). The legislature did not expressly or implicitly determine that governmental penalties arising from money obtained by fraud somehow should be discharged while the panoply of all other potential non-restitutionary debt arising from money obtained by fraud (such as treble damages and attorney's fees) should be nondischargeable.

In the Court's view, Sections 523(a)(2)(A) and 523(a)(7) do not conflict and instead can be harmonized in a way that makes neither provision completely duplicative of the other.  *See Maracichi v. Spears*, 133 S.Ct. 2191, 2205 (2013) (quoting Antonin Scalia and Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 180 (Thomson/West Pub. 2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory . . . . [T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.")

The most natural and harmonious reading of the Bankruptcy Code consistent with *de la Cruz* is that Section 523(a)(2)(A) provides for the nondischargeability of any and all debts (compensatory and non-compensatory) arising from money obtained by fraud (including governmental statutory penalties arising from money obtained by fraud).  Section 1328(a)(2), which refers to Section 523(a)(2), confirms that the Chapter 13 discharge does not discharge such Section 523(a)(2)(A) debt.  On the other hand, Section 523(a)(7) deals generally with the nondischargeability of all types of governmental penalties, whether arising from money obtained by fraud or not.  In this way, the State's nondischargeability claim for penalties under Section 523(a)(2)(A) does not render Section 523(a)(7) superfluous.  *See Kozlowski*, 547 B.R. at 232 ("Court's ruling does not make either § 523(a)(2) or § 523(a)(7) superfluous."); *Andrews II*, 2016 WL 4497757, at *2 ("Section 523(a)(7) refers generically to penalties, but Section 523(a)(2) creates special treatment for debt that was obtained by fraud.  This compels the conclusion that Section 523(a)(2) applies here, not Section 523(a)(7).").

### 3.    The History of Section 1328(a) Does Not Support the Debtor's Position.

The Debtor makes an argument based upon the historical statutory sequence:

> It is significant that when Congress amended § 1328(a) [in 2005] it did not see fit to add to this section a provision to render penalties to a government unit non-dischargeable under § 523(a)(7).  From the legislative [history] Congress must have been aware that the statute left fines, penalties and forfeitures as dischargeable in the context of Chapter 13.

(Docket No. 18 at 8.)  Since the Court already has determined that a plain reading of the relevant statutory texts (coupled with the binding *de la Cruz* precedent) answers the question presented, no historical interlude is necessary.  Notwithstanding, the jaunt through history does not help the Debtor.

12

When the Bankruptcy Code was enacted in 1978, Section 523(a) provided multiple exceptions to discharge in Chapter 7 liquidation cases (including Sections 523(a)(2) and 523(a)(7)).  But the scope of discharge in Chapter 13 cases was much broader.  Section 1328(a) originally provided very few exceptions to discharge:

> As soon as practicable after completion by the debtor of all payments under the plan . . . the court shall grant the debtor a discharge of all debts provided for by the plan . . . except any debt — (1) provided for under section 1322(b)(5) of this title; or (2) of the kind specified in section 523(a)(5) of this title.

11 U.S.C. § 1328(a) (1978).  The types of debts excepted under original Section 1328(a) were only debts for alimony, maintenance, or support, and certain long-term obligations listed under the plan.  *Hardenberg v. Commonwealth of Va. Dep't of Motor Vehicles (In re Hardenberg)*, 42 F.3d 986, 987 n.1 (6th Cir. 1994).

In 1986, the Supreme Court ruled that Section 523(a)(7) broadly applied to all penal sanctions, including criminal fines, so that criminal restitution was nondischargeable in Chapter 7 proceedings.  *Kelly v. Robinson*, 479 U.S. 36, 38-39 (1986).  A few years later, in *Davenport*, however, the Supreme Court held that criminal restitution was dischargeable in Chapter 13 cases.  495 U.S. at 563.  In response to *Davenport*, Congress amended Section 1328(a) in 1990, making nondischargeable debts for criminal restitution in Chapter 13 proceedings.  11 U.S.C. § 1328(a)(3) (1990).  Congress amended Section 1328(a) again in 1994 to make nondischargeable criminal fines in Chapter 13 cases.  11 U.S.C. § 1328(a)(3) (1994).  A few years later, the Supreme Court issued its *de la Cruz* decision holding that "[o]nce it is established that specific money or property has been obtained by fraud . . . 'any debt' arising therefrom," including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor, is excepted from discharge under Section 523(a)(2)(A).  *Id.* at 216.

In the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109–8, 119 Stat. 23 (2005), which was enacted several years after the Supreme Court's ruling in *Cohen*, Congress expanded the list of nondischargeable debts in section 1328(a)(2) to restrict the "super discharge."  *See In re Kubeczo*, 2012 WL 2685115, at *7 (Bankr. D. Colo. Jul. 6, 2012) (citing *In re Waag*, 418 B.R. 373, 377 (9th Cir. BAP 2009)).  In 2005, Congress "made all debts arising from fraud nondischargeable in Chapter 13, by adding § 523(a)(2) to the list of debts excepted from discharge in § 1328(a)."  *Kozlowski*, 547 B.R. at 230.  Section 1328(a)(2) now excepts from discharge a broad range of debts, including debts "of the kind specified . . . in paragraph (1)(B), (1)(C), (2), (3), (4), (5), (8), or (9) of section 523(a)."

But where does this history get us?  The Court agrees with the historical assessment in *Kozlowski*:

> In 2005, Congress knew that because of *Cohen*, **all** debts for fraud, including debts that are compensatory in nature as well as debts that are punitive in nature, [were] nondischargeable under § 523(a)(2).

> Knowing this, Congress chose in 2005 to make all § 523(a)(2) debts nondischargeable in Chapter 13.
>
> This history shows that Congress intended that *all* debts for fraud, including civil fraud penalties, be non-dischargeable in Chapter 13.

547 B.R. at 230 (emphasis in original).  Thus, history confirms the meaning of the text itself: penalties arising from overpayment of unemployment compensation caused by fraud are nondischargeable under Sections 523(a)(2)(A) and 1328(a)(2) in Chapter 13 cases.

## VI.       Conclusion and Order.

The State has pled a legally sufficient claim under Section 523(a)(2)(A) for the nondischargeability of (1) $9,056 of overpaid unemployment compensation; (2) $5,706.35 of penalties; and (3) $3,690.58 of collection fees.  Dismissal of the State's Section 523(a)(2)(A) claim is not proper under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012. Accordingly, it is

ORDERED that the Motion to Dismiss is DENIED.

DATED this 27th day of September, 2016.

BY THE COURT:

*Thomas B. McNamara*

Thomas B. McNamara,
United States Bankruptcy Judge

14